## THE RELIEF.

### GRADDICK v. THE RELIEF.

#### (District Court, E. D. South Carolina. August 9, 1894.)

1. COLLISION—TUG AND SAIL—FAILURE TO FILL OUT TACK.
  A sloop met by a tug and barge near the shore of a river, and struck shortly after going about, must be *held* in fault for failing to fill out her tack, by two or three lengths, or to luff into the wind until the tug had passed.

2. SAME—DUTY OF TUG—FAILURE TO GIVE ROOM.
  Under the rule that the steamer must keep out of the way, a tug meeting a sloop tacking towards the shore must be *held* in fault for passing so close as to involve danger of collision in case the sloop should not beat out her tack to the utmost limit.

This was a libel by Henry T. Graddick against the steam tug Relief to recover damages for a collision with the sloop Shamrock.

Mitchell & Smith and R. W. Memminger, for libelant.
J. N. Nathans, for respondent.

BRAWLEY, District Judge. This is a libel for a collision which occurred in the Ashley river about noon on April 26, 1894. The sloop Shamrock, loaded with gravel, was beating down the Ashley river with a light wind from the southeast, the tide being just past the flow. The steam tug Relief, with a large barge in tow, was coming up the river, and sighted the sloop near the west bank, as she was about tacking to the eastward. The collision occurred

near the east bank. and the sloop was sunk. The master of the sloop testifies that he had beaten out his tack to the eastward, and had turned upon his starboard tack, when the barge ran into him. If this testimony is to be taken as true, there can be no doubt as to where the fault lies, for the rules of navigation applicable thereto have been settled by repeated adjudications, and are embodied in the statute law, which prescribes that:

"If two vessels, one of which is a sail vessel and the other a steam vessel, are proceeding in such direction as to involve risk of collision the steam vessel shall keep out of the way of the sail vessel." Rev. St. U. S. § 4233.

As the collision did occur, and as there were no circumstances which rendered it inevitable, it is manifest that there was blame somewhere; and, as is usual, there is conflict of testimony.

. The master of the sloop is not supported by any other witness near the scene of the accident, in his version of the story. There were two other men aboard the sloop. Neither of them were examined. It was stated by counsel for the libelant that one of these men could not be found; but one of them was present, and not called. It may not be fair to attach too much significance to this omission, for, having made out a prima facie case against the steam vessel, the libelant could rest, but he does so at his risk. As there is always conflicting testimony in these cases, the court is entitled to hear and see all the witnesses, so that it may, notwithstanding such conflict, reach a conclusion as to how the accident really occurred; and, while it will not be assumed that the other witnesses would have contradicted the master, the omission to produce them leaves him unsupported upon a material point. Such omission, considered in connection with the testimony of the master that he was not called upon to look out for steamers, as it was the steamer's duty to keep out of his way, rests upon an erroneous conception of the law. While it is true that it is the duty of the steam vessel to keep out of the way of the sail vessel, there is a correlative duty on the part of the sail vessel, when approaching a steamer, to keep its course, and a failure so to do must be imputed to it as a fault.

The witnesses for the respondent all say that the master of the sloop changed his course almost immediately after passing the bow of the tug, instead of beating out his tack to the eastward, where he had room enough to do so in safety. The river at this point is about 400 feet wide; the channel lies near the eastern shore; and the Shamrock, having been struck by the bow of the barge on her port side, just aft her shrouds, is sunk in 17 feet of water, near the bank. There is no direct testimony as to the exact distance of the sloop, as she now lies, from the shore. Counsel for libelant state that her stern is about 20 or 25 feet from the shore. The master of the tug testifies that she did not sink at the point where she was struck, but that the barge, in veering around, carried her further in shore.

Three classes of witnesses have testified,—the master of the sloop, the master and crew of the tug, and certain disinterested onlookers. On the vital question as to whether the sloop had filled out her tack to the eastward, the master of the sloop stands uncor-

roborated, save by the testimony of two witnesses who were on the western bank. They are disinterested, but their testimony upon this point is of little value, because, from their position and distance from the scene, it is impossible that they should know accurately whether the sloop had room, while the testimony of the master and crew of the tug is supported by a disinterested witness,—a gentleman of high character and intelligence,—who happened to be on the tug that day. He was in the pilot house. His attention was closely fixed upon the sloop, and his testimony is positive and direct that the sloop was two or three boat lengths from the shore when she tacked, and that if she had filled out her tack to the eastward, instead of changing her course in face of the approaching steamer, she would have avoided the collision. All of the witnesses for the respondent concur in the statement that there was room for the sloop to beat out her tack to the eastward, and that the sudden change of course caused the collision. When it is considered that the shore at this point is in no sense a dangerous one, that it is bordered by a marsh which at high tide might have had water sufficient to float the sloop, and that no great peril would have ensued even if the sloop had gone ashore at that point, it is impossible to escape the conclusion that the sloop was badly handled, and that the peril might have been avoided altogether, or minimized, if the master of the sloop had not lost his head. If he had held his course but a very short time longer, or had luffed up into the wind, either of which was available by competent management, he would have avoided the collision, and his failure to do so must be imputed to him as negligence.

But this conclusion does not relieve the tug from all blame, and she cannot escape condemnation. It was the primary duty of the tug and tow to keep out of the way. From the time the sloop was sighted, it was the duty of the steamer to watch her progress and direction, and to adopt such timely measures of precaution as would necessarily have avoided the collision. The fact that they did collide shows that there was a danger to be guarded against, and it does not satisfactorily appear that the master of the tug took such account of all the circumstances of the situation as prudence obviously demanded. He testifies that he blew two whistles to indicate that he was going to pass to the stern of the Shamrock. Yet he did not change his course. The man at the wheel testifies that his wheel was amidships until just before the collision, when he put it hard down. Although the channel was near the east bank, there was, in the then state of the tide, plenty of water in the river; and he could have borne away, or slacked his speed, stopped, and reversed. He took no such timely precautions until it was too late. When there was abundant room to keep properly out of the way, it cannot be held to be prudent or justifiable navigation to take such a course as would bring him into dangerous proximity to the sloop. Although it is held that the sloop did not run out her tack as near to the shore as she possibly might have gone, she did not come far short of it; and although the master of the sloop might, by good seamanship, have escaped collision by letting her sheets go, and

shaking in the wind, yet some allowance must be made for the confusion incident to such dangerous proximity, and the master of the tug cannot be absolved from the charge of obvious imprudence in failing to keep a reasonably safe margin between himself and the sloop. Holding, therefore, that the close line which the steamer was making upon the sloop's course 'was not a reasonable and substantial compliance with her maritime obligation to keep out of the way, she must also be held in fault.

Let the damages and costs, therefore, be divided.